**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:19CR173 (MPS) |
| v. | : | |
| LEE FERGUSON | : | February 3, 2021 |

**MEMORANDUM IN SUPPORT OF MOTION FOR SENTENCE REDUCTION**
**UNDER 18 U.S.C. § 3582(c)(1)(A)(i) AND SECTION 603 OF THE FIRST STEP ACT**

The defendant, Lee Ferguson, through undersigned counsel, respectfully requests this Court grant his motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The COVID-19 health crisis and danger it poses to Mr. Ferguson, who is incarcerated with underlying medical issues, present extraordinary and compelling reasons warranting such a reduction. Mr. Ferguson moves this Court to reduce his sentence to time served and release him to home confinement in light of: (a) the COVID-19 pandemic, which is particularly dangerous in the confines of a prison; (b) Mr. Ferguson's health issues, which place him at higher risk of severe illness and possibly death if exposed to COVID-19; and (c) the significant restrictions consequently imposed at FCI Schuylkill where Mr. Ferguson is serving his sentence.

Mr. Ferguson is almost 64 years old, and suffers from hypertension, prediabetes and thyroid issues. These factors, combined with his placement at FCI Schuylkill, are extraordinary and compelling reasons for modification of his sentence to home confinement.[1]

---

[1] In granting authority to the District Courts to consider motions pursuant to 28 U.S.C. § 3582(c)(1)(A), Congress intended to expand, expedite, and improve the process of compassionate release. United States v. Brooker, 976 F.3d 228, 235 (2d Cir. 2020). The Second Circuit affirmed the Court's discretion to consider a wide range of factors in assessing a motion for compassionate release, including a defendant's "age at the time of [the] crime, . . . and "the present coronavirus pandemic," Id. at 238. "[T]he only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation alone shall not be considered an extraordinary and compelling reason." Id. at 237-

## **PROCEDURAL BACKGROUND**

On July 31, 2019, Mr. Ferguson waived Indictment and pleaded guilty to a one-count Information charging him with Money Laundering, in violation of 18 U.S.C. § 1356(a)(1)(A)(i). The parties agreed that Mr. Ferguson's total offense level was 24 and he was in criminal history category I, with a corresponding sentencing guidelines range of 51-63 months' imprisonment.[2]

On January 27, 2020, Mr. Ferguson was sentenced to 20 months' incarceration and one year supervised release. This sentence represented a variance from the defendant's sentencing guidelines range based on Mr. Ferguson's relatively advanced age, low risk of recidivism and the fact that Mr. Ferguson's misconduct did not cause substantial financial harm to anyone.

At sentencing, Mr. Ferguson requested designation to FPC Pensacola so that he could be in close proximity to his family. Mr. Ferguson was so designated and expected to self-surrender on April 28, 2020. Shortly before that date, the Bureau of Prisons delayed Mr. Ferguson's self-surrender to July 28, 2020 due to the pandemic, and ultimately redesignated him to Schuylkill FCI.

According to BOP records, Mr. Ferguson's projected release date is December 27, 2021. Taking into account elderly offender release eligibility, Mr. Ferguson's anticipated date of release is September 5, 2021.

---

38 (internal quotations omitted). Significantly, the Court is not limited to those reasons enumerated in Application Note 1 of Guideline section 1B1.13, nor Attorney General Barr's directive to consider primarily those acute health problems, and may exercise discretion in determining whether a totality of factors warrants granting such a motion. See also United States v. McCoy, No. 20-6821, 2020 WL 7050097, at *9 (4th Cir. Dec. 2, 2020) (District Courts can consider any extraordinary and compelling reason for release raised by a defendant); United States v. Jones, No. 20-3701, 2020 WL 6817488, at *9 (6th Cir. Nov. 20, 2020) (District Courts have full discretion to determine what constitutes extraordinary and compelling reasons for release). The Second Circuit recently observed that "compassionate release is a misnomer" as the modifications to § 3582(c)(1)(A) under the First Step Act "in fact speak[] of sentence reductions." Brooker, 976 F.3d at 237.

[2] USPO Paul Collette calculated Mr. Ferguson to be in criminal history category II based on Mr. Ferguson's sole prior conviction, Operating Under the Influence, in 2010. The Court granted a Fernandez departure.

2

As mentioned above, Mr. Ferguson has health issues that put him at an elevated risk of suffering serious complications from COVID-19 relative to other inmates without health problems. Extraordinary events that could not have been foreseen at the time of sentencing have made Mr. Ferguson's confinement at FCI Schuylkill extremely restrictive and dangerous, particularly since both inmates and staff at FCI Schuylkill have contracted COVID-19. As of the date of this submission, the BOP reports there are currently **14 inmates and 14 staff who have tested positive for COVID-19.**[3] These figures are constantly changing, and while the most recent statistics are less troubling than last week's count of 204 inmates and 13 staff who had tested positive, the course of this public health crisis is completely unpredictable. While it is expected that a vaccine will be made available to staff and inmates in the future, there is uncertainty regarding the timing and availability of the vaccine, and the availability of a second dose—and whether such vaccine protects against the various strains appearing across the country.

Mr. Ferguson requested Compassionate Release on October 2, 2020 and his request was denied on October 8, 2020 (see attached).

**DISCUSSION**

The First Step Act grants sentencing courts the authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Under the statute, the requirements for release are that the Court: (1) find extraordinary and compelling reasons for the reduction; (2) consider the relevant sentencing factors under 18 U.S.C.§ 3553(a); and (3) ensure any reduction is consistent with applicable policy statements. Here, the Court has the authority to modify Mr. Ferguson's sentence and such modification is in the interests of justice.

---

[3] See https://www.bop.gov/coronavirus/ .

Mr. Ferguson is an appropriate candidate for release and meets criteria detailed in Attorney General Barr's directive to the Bureau of Prisons: he is particularly vulnerable to complications from COVID-19 due to his health conditions, he has a reentry plan that will significantly lower his risk of contracting the virus, and he has demonstrated through his pre-and post-sentencing conduct that he is not a danger to the community and will comply with conditions of supervised release, including home confinement.[4]

**There are Extraordinary and Compelling Reasons for Compassionate Release**

### I.     Mr. Ferguson's health issues.

While "extraordinary and compelling reasons" for a reduction in sentence are not limited to serious health issues, Mr. Ferguson's health conditions place him at risk of suffering serious complications and possibly death should he contract COVID-19. Information about COVID-19 is constantly being updated as scientists and other health professionals learn about different facets of this disease. The CDC recognizes "COVID-19 is a new disease. Currently, there are limited data and information about the impact of many underlying medical conditions and whether they increase the risk of severe illness from COVID-19."[5]

Mr. Ferguson has hypertension, thyroid issues and prediabetes, and is over sixty years old (see attached). The combination of these conditions place Mr. Ferguson at significant risk of serious illness or death should he contract the virus, and present extraordinary and compelling circumstances warranting release.

---

[4] See Memorandum for the Attorney General dated March 26, 2020, located at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf and Memorandum from the Attorney General dated April 3, 2020, located at https://www.justice.gov/file/1266661/download.

[5] See Center for Disease Control https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-with-medical-conditions.html.

4

The CDC warns that people with hypertension may be at higher risk of getting very sick from COVID-19.[6] Studies have demonstrated an increased risk of COVID-19 infections and complications in people with hypertension.[7] Data indicates that hypertension is the most commonly shared pre-existing condition among those hospitalized, affecting between 30% to 50% of the patients. Other health conditions included cancer, diabetes, or lung disease. An Italian study shows that more than 99% of people who had died from the virus had one of these conditions and 76% of them had high blood pressure. Other research demonstrates that people with high blood pressure are at increased risk of death from coronavirus.[8] The World Health Organization (WHO) reports that people with hypertension are among the highest-risk groups for more serious cases of, and death from, COVID-19.[9]

Courts have recognized hypertension renders prisoners more vulnerable to health complications from COVID-19 justifying a reduction in sentence. See United States v. Lauria, 3:96cr185 (RNC)(D. Conn. May 14, 2020)(defendant suffered hypertension and liver disease); United States v. Zukerman, 2020 WL 1659880, *2–*3 (S.D.N.Y. Apr. 3, 2020) (Torres, J.)(granting compassionate release for defendant with diabetes, hypertension, and obesity); United States v. Sawicz, 2020 WL 1815851, *2 (E.D.N.Y. Apr. 10, 2020) (Ross, J.) (granting compassionate release).

Mr. Ferguson's advanced age increases his vulnerability to the coronavirus. The World Health Organization notes "older people" are among the populations most at risk of suffering from a severe form of the disease.[10] Similarly, the CDC explains that "people in their 60s are at a higher

---

[6] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html
[7] https://www.webmd.com/lung/coronavirus-high-blood-pressure#1
[8] https://www.webmd.com/lung/coronavirus-high-blood-pressure#1
[9] https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf
[10] https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf

risk for severe illness" from COVID-19.[11] The hospitalization rate for persons aged 50–64 is considerably higher than that of persons under age 50. Notably, the morbidity rate in older men with COVID-19 is higher than for older women. One report from the United Kingdom found that almost twice as many men aged 46–64 died of COVID-19 by March 27, 2020 than women aged 46–64.[12]

Mr. Ferguson's medical records show he is pre-diabetic, and that his blood sugar level (determined by an A1C test, a common blood test that registers a person's average blood sugar level for the past two to three months) is 5.8. The CDC states that "[a]n A1C below 5.7% is normal, between 5.7 and 6.4% indicates you have prediabetes, and 6.5% or higher indicates you have diabetes."[13] Pre-diabetes is a health condition that increases the risk of a person developing type 2 diabetes, heart disease, and stroke. A person can prevent the development of type 2 diabetes by eating a healthy diet and getting regular physical exercise. Mr. Ferguson is unable to control his diet or exercise under the current restrictive lockdown conditions. Courts have found diabetes to be sufficient grounds for granting compassionate release. United States v. Colvin, No. 19 Cr. 179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (defendant with diabetes granted compassionate release); United States v. Rivernider, 3:10cr222 (RNC), 2020 WL 2393959 (D. Conn. May 12, 2020)(granting compassionate release to defendant with diabetes, heart disease, and hypertension); United States v. Rodriguez, No. 2:03cr271, Doc. # 135 at 2,—F.Supp.3d __, 2020 WL 1627331 (E.D.P.A. Apr. 1, 2020) (granting diabetic defendant compassionate release). Courts in this District, and federal courts throughout the country, have found extraordinary and compelling

---

[11] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html
[12] https://www.menshealthforum.org.uk/covid-19-statistics-england-wales
[13] Diabetes Tests, Centers for Disease Control and Prevention, https://www.cdc.gov/diabetes/basics/getting-tested.html.

reasons warranting compassionate relief based on a defendant's increased vulnerability to the coronavirus.

This health crisis and the dangers it represents has influenced the Courts' decisions in cases where defendants have only served a small portion of their sentences. See, e.g. United States v. Gileno, No. 3:19cr161(VAB), 2020 WL 1916773 (D. Conn. Apr. 20, 2020) (granting compassionate release to defendant who defrauded charity of over two million dollars and had served less than 25% of his sentence); United States v. Delgado, No. 3:18cr17 (VAB), 2020 WL 2464685 (D. Conn. Apr. 30, 2020)(granting compassionate release to defendant sentenced to a ten year mandatory minimum sentence who had served approximately 20% of his sentence).

## II. Conditions of confinement have been extraordinarily restrictive.

FCI Schuylkill has been hit particularly hard by COVID-19. Mr. Ferguson's sentence has been unexpectedly (and unavoidably) restrictive from the date of his self-surrender because of the COVID-19 outbreak at Schuylkill. Mr. Ferguson was placed in a 21-day quarantine upon commencement of his sentence and was unable to communicate with his family or leave his cell except to shower during that time. After this initial quarantine period, Mr. Ferguson completed educational programs and began performing electrical work within the facility. He enjoyed being productive and providing a service. Due to another outbreak, however, administrators at the BOP needed to take extreme measures to protect staff and inmates at the facility, and the only viable option to reduce the spread of the virus was to put inmates on lockdown. Mr. Ferguson was transferred from the satellite camp to the main prison where he was confined to a small cell with another inmate. Again, he was unable to contact his family, and all scheduled legal calls were cancelled due to the need to limit movement within the facility. Mr. Ferguson remained in isolation

for 42 days. The only time he was allowed to leave his cell was to take a shower three times a week.

When Mr. Ferguson was sentenced to a term of imprisonment, nobody knew the grave risk presented by COVID-19 or contemplated the significant restrictions necessary to minimize that risk in prison. If the Court determines further punishment is necessary to meet the goals of sentencing, such a result can be accomplished by imposing a period of home confinement with whatever restrictions the Court determines appropriate.

**A Sentence Reduction is Warranted**

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in 18 U.S.C. § 3553(a) to determine whether a sentence reduction is warranted. As indicated by the Supreme Court, the Court can and indeed must, consider "the most up-to-date picture" of the defendant's history and characteristics which "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." Pepper v. United States, 562 U.S. 476, 492 (2011). Here, the most up-to-date picture of Mr. Ferguson is an individual with health issues who is incarcerated during a pandemic, circumstances that were not present when he was sentenced. Although Mr. Ferguson's offense conduct is serious, his sentence was imposed without premonition that incarceration would expose him to a life-threatening illness and that his sentence would involve such severely restrictive conditions of confinement. The § 3553(a) factors can be met in this case by an order of home confinement as a condition of supervised release.

Significantly, Mr. Ferguson has been incarcerated for over six months, more than 35% of his sentence factoring in anticipated statutory good time. Moreover, the circumstances surrounding the service of his sentence have been particularly punitive, and the health risks despite necessary precautionary measures have caused anxiety and fear. Mr. Ferguson has faced significant

punishment. As a result of this prosecution, his misdeeds were exposed, he sustained a federal felony conviction and he resigned from the company he spent his whole life building. While loss of employment is considered a "collateral" consequence of a conviction, his legacy is shrouded in shame. Above and beyond the fact of incarceration, the shock of isolation and quarantine and fear of exposure to a deadly virus without access to family have profoundly affected Mr. Ferguson.

It is unlikely Mr. Ferguson will be able to participate in any rehabilitative, educational or vocational programs for the duration of the remainder of the custodial portion of his sentence. The current prison climate is not conducive to rehabilitation, and the punitive and rehabilitative components of sentencing would be best met by ordering Mr. Ferguson released to home confinement, during which time he can quarantine while under supervision by the U.S. Probation Office.

**Mr. Ferguson's Release Plan Will Ensure His and the Community's Safety**

Mr. Ferguson has a solid release plan that will ensure his and the community's safety. Mr. Ferguson would be able to immediately move into his residence in Farmington, Connecticut, less than 15 miles from the Hartford Probation Office. His residence will be readily compatible with electronic monitoring. This home has already been inspected and approved for home confinement by U.S. Probation Officer Jesse Murray.[14]

Mr. Ferguson's pre and post sentencing conduct is a good predictor of future compliance. When Mr. Ferguson pleaded guilty to an Information he was released on an appearance bond; at that time, Pretrial Supervision was considered unnecessary. Now, conditions of supervised release

---

[14] USPO Murray's home visit is not related to this motion, but rather was part of a "pre-release" investigation, where BOP reaches out to the US Probation office to visit (in this case, virtually) the proposed residence, speak with the individuals who live at the address, and notify BOP regarding whether a defendant's proposed release address is approved or denied. The U.S. Probation office notified BOP that Mr. Ferguson was approved to reside with Ms. Erdman at the Farmington address following his release. This investigation was done in September, 2020, consistent with a September, 2021 projected release date.

can include home confinement with electronic monitoring. Mr. Ferguson's partner, Joanne Erdman, will reside with Mr. Ferguson at that address, and can serve as a third party custodian to ensure he stays home and complies with whatever conditions the Court imposes during this unprecedented time.

A sentence of home confinement, enabling Mr. Ferguson to quarantine safely, would address the punitive and rehabilitative components of his sentence. Home confinement has been an option utilized in this district when a defendant is not a safety risk to the community. See United States v. Coston, No. 3:16-CR-127-SRU, ECF No. 98 (D. Conn. Apr. 16, 2020) (Underhill, C.J.) (defendant placed on home confinement during the time he would have been incarcerated).

If the Court grants Mr. Ferguson's compassionate release motion, Mr. Ferguson would be subject to stringent conditions of home confinement and would face additional incarceration should he violate any conditions of release. The possibility of returning to prison will serve as an effective deterrent and ensure that Mr. Ferguson will not do anything to risk further incarceration. See e.g. United States v. Holmes, 2020 WL 4355118, at *4 (Court concluded that "the support Mr. Holmes will have upon his release and the possible reinstatement of a twenty-four-month term of incarceration for a violation of conditions of supervised release, coupled with the threat of the coronavirus, provides a sufficient basis to support Mr. Holmes' release").

WHEREFORE, Mr. Ferguson respectfully requests that the Court grant this motion for a reduction in sentence, reduce his sentence to time served, and allow him to discharge to home confinement.

>Respectfully submitted,
>THE DEFENDANT,
>LEE FERGUSON
>/s/ Audrey A. Felsen
>Audrey A. Felsen, Esq.
> Koffsky & Felsen, LLC
>1150 Bedford Street
>Stamford, CT  06905
>Tel.: 203-327-1500
>Fax: 203-327-7660
>Federal Bar No.: ct20891
>E-mail: afelsen@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 3, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

>/s/ Audrey A. Felsen
>Audrey A. Felsen